UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMZA GIBSON,

               Petitioner,            Case No. 2:12-CV-15650

     v.                   HONORABLE GEORGE CARAM STEEH
                                 UNITED STATES DISTRICT JUDGE

KEN ROMANOWSKI,

               Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Hamza Gibson, ("Petitioner"), presently confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254, in which he challenges his conviction for assault with intent to

commit murder and aggravated domestic violence.  For the reasons that follow, the

petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted following a bench trial in the Wayne County Circuit

Court.  Petitioner was also convicted of assault with intent to do great bodily harm but

this charge was vacated on appeal by the Michigan Court of Appeals.

On April 12, 2009, petitioner assaulted Frances Magett, the mother of his

children, in the street outside her home.  Petitioner punched her, knocked her to the

ground, and continued to stomp, kick, and punch the victim in the face while telling her,

"die, bitch, die."  Petitioner broke the victim's nose during the assault. (Tr. 3/25/10, pp.

1

14-18, 29-32, 42, 55; Tr. 3/26/10, pp. 5, 25).  During the assault, the victim's cousin, Nicole Burnside, called 911 and asked for help. (Tr. 3/25/10, pp. 29-30).  Two women who were walking down the street attempted to help the victim, but petitioner showed them a gun that was in his waistband, causing the women to back away with their hands up.  Petitioner left the victim lying nearly unconscious in the street, speeding away in his car. (*Id.* at 30-33).

Burnside and two pedestrians picked the victim up off the ground and assisted her up the steps to her house.  The victim was unable to stand and collapsed as she was being helped up the steps.  The victim was taken by an ambulance to the hospital. (*Id.* at 15-16, 34).  The victim suffered a broken nose, swollen face, two black eyes, facial lacerations, and a cut lip requiring stitches. (*Id.* at 16-18, 55; Tr. 3/26/10, pp. 32-33).

Petitioner admitted striking the victim "quite a few times," but denied intending to kill her. (Tr. 3/26/10, pp. 5-8).

Petitioner's conviction was affirmed on appeal. *People v. Gibson*, No. 297814, 2011 WL 2858884 (Mich. Ct. App. July 19, 2011); *lv. den.* 490 Mich. 971 (2011).

Petitioner filed a habeas petition, which was held in abeyance to permit petitioner to return to the state courts to exhaust additional claims that he had failed to raise in the state courts prior to filing his habeas petition.  The Court administratively closed the case. *Gibson v. McLaren*, 2013 WL 1337353 (E.D. Mich. April 1, 2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Gibson,* 09-030022-01 (Third Judicial Circuit Court for the County of

2

Wayne, September 10, 2013).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Gibson*, No. 319683 (Mich.Ct.App. February 4, 2014); *lv. den.* 497 Mich. 853 (2014).

On September 25, 2014, the Court lifted the stay and reinstated the case to the Court's active docket.

In his amended habeas petition, petitioner seeks habeas relief on the following grounds:

> I. The lack of sufficient evidence sustaining my assault with intent to murder conviction.
>
> II. Conviction obtained by violating double jeopardy protections.
>
> III. Denial of arraignment on assault with intent to murder.
>
> IV. Bindover issue.

Although unclear, petitioner may also be seeking habeas relief on two additional claims that he raised in his original habeas petition.  These claims are:

> V. (Claim # 3 on the original petition).  Denial of right to effective appeal.
>
> VI.  (Claim # 4 on the original petition).  Denial of due process and the effective assistance of counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

3

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

4

U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Harrington,* 562 U.S. at 103.

## III.  Discussion

### A. Claim # 1.  The sufficiency of evidence claim.

Petitioner first contends that there was insufficient evidence of his intent to kill so as to support his conviction for assault with intent to commit murder.

The Michigan Court of Appeals rejected petitioner's claim:

Viewed in a light most favorable to the prosecution, the evidence in this instant case was sufficient to establish that defendant had the intent to murder the victim.  It is undisputed that defendant physically assaulted the victim.  The victim testified that defendant confronted her outside her home and demanded to know why she had called his probation officer.  Defendant then chased the victim around his vehicle and, after catching her, punched her multiple times in her face with his fists while yelling, "Die Bitch Die," or something similar.  At some point, the victim became unconscious as a result of the beating from defendant.   A friend of the victim who witnessed the entire incident confirmed that defendant punched the victim in the face multiple times with his fists while saying, "Die, Bitch, Die."  The friend also testified that defendant stomped on the victim five or six times while she was on the ground.  The victim suffered substantial injuries to her face, including a broken nose, a badly swollen face, two black eyes, and a lacerated bottom lip that required stitches.  Photographs of the victim's injuries were admitted into evidence.  Defendant ceased the assault only when two women ran toward the scene.  The women stopped and backed away when defendant lifted his shirt and displayed what appeared to be a black gun tucked into his pants.  Direct and circumstantial and direct evidence showed that the victim's injuries were not minor, as defense counsel suggested at trial.   Counsel minimized the severity of her injuries by asserting that the prosecution demonstrated "at best" that defendant hit the victim several times and kicked her, and that plaintiff had a split lip that required a "few" stitches and black eyes.    To the contrary, the testimony demonstrated that the victim experienced a violent attack in the face of being told to "Die, Bitch, Die," and that her injuries were so serious that she was knocked unconscious and had to be rushed to the hospital.  Based on the nature of defendant's assault, the words he uttered to the victim, the severity of her injuries and defendant's departure from the scene without aiding her, a reasonable juror could infer that defendant had the specific intent to kill the victim.   The fact that

6

defendant did not succeed in ending the victim's life through his abusive acts does not invalidate this inference.

*People v. Gibson*, 2011 WL 2858884, at *2.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be

7

mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas

court reviewing a state court conviction, "the only question under *Jackson* is whether

that finding was so insupportable as to fall below the threshold of bare rationality."

*Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal*

*v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to

the fact finder for its assessment of the credibility of witnesses. *Matthews v.*

*Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003); *See also Butzman v. U.S.,* 205 F. 2d

343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial

judge).  The Court does not apply the reasonable doubt standard when determining the

sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir.

1995).

Under Michigan law, the elements of assault with intent to commit murder in

Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful,

would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir.

1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001).  The

intent to kill element does not equate with murder. *Warren,* 161 F. 3d at 361 (citing

*People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1, 7 (1985)).  Thus, an intent to kill for

purposes of this offense may not be proven by an intent to inflict great bodily harm or a

8

wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *Id.* Therefore, a conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich.App. 613, 620; 431 N.W. 2d 83 (1988)). The intent to kill, for purposes of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See Taylor*, 422 Mich. at 567-68. In determining the defendant's intent, a court may take into account "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Id.* at 568 *(quoting Roberts v. People*, 19 Mich. 401, 415-16 (1870)); *Warren,* 358 F. 3d at 361.

In the present case, the evidence established that petitioner punched the victim in the face multiple times while yelling "die, bitch, die." Petitioner also stomped on the victim five or six times while she was lying helplessly on the ground. The beating was so severe that the victim fell unconscious and had to be rushed to the hospital by ambulance. The victim received substantial injuries to her face, including a broken nose, a badly swollen face, two black eyes, and a lacerated bottom lip that required stitches. It was also reasonable to infer that petitioner stopped assaulting the victim

only after the two women attempted to intervene.  The location and severity of the
wounds as well as petitioner's statement "die, bitch, die" was sufficient to lead a rational
trier of fact to infer that petitioner intended to kill the victim.  A review of the record
reveals that, while there was conflicting evidence, there exists a factual basis upon
which the state court finding that petitioner possessed the intent to kill may be
supported, so as to deny petitioner habeas relief. *Warren,* 161 F. 3d at 362.  Petitioner
is not entitled to habeas relief on his first claim.

**B.  Claim # 2. The Double Jeopardy claim.**

Petitioner argues that his conviction on multiple assault charges violates the Fifth
Amendment's Double Jeopardy Clause.

As an initial matter, this Court notes that the Michigan Court of Appeals agreed
that petitioner could not be convicted of separate counts of assault with intent to murder
and assault with intent to do great bodily harm with respect to a single victim and
vacated the assault with intent to do great bodily harm on appeal. *People v. Gibson,*
2011 WL 2858884, at *1.  Petitioner's Double Jeopardy claim that he was improperly
convicted of both assault with intent to murder and assault with intent to do great bodily
harm less than murder has been mooted by virtue of the fact that the Michigan Court of
Appeals ordered that the second charge be vacated. *See Harris v. Metrish,* No. 2006
WL 1313804, *6 (E.D. Mich. May 12, 2006)(citing *Nichols v. Moore,* 923 F. Supp. 420,
423-24 (W.D.N.Y. 1996).  This portion of petitioner's Double Jeopardy claim is
meritless, because petitioner received all the relief to which he was entitled for this error
when the Michigan Court of Appeals vacated petitioner's assault with intent to do great

10

bodily harm conviction. *See Tiggart v. Robinson*, 36 Fed.Appx. 750, 751 (6th Cir. 2002).

Petitioner further argues that his convictions for assault with intent to murder and his aggravated domestic violence conviction violate the Double Jeopardy Clause.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996). The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984). Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977). As the Supreme Court explained that test in *Brown*:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not····" This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied,

11

notwithstanding a substantial overlap in the proof offered to establish the crimes····"

*Id.* at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

Analysis of this issue requires the Court to determine "whether [the legislature] intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F. 2d 533, 536 (6th Cir. 1980)(quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)). "To determine the [legislative] intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Pandelli,* 635 F. 2d at 536.  If the legislative intent is not clearly expressed or cannot be discerned by accepted techniques of statutory construction, then the Court must analyze the two crimes to determine if the elements completely overlap according to the *Blockburger* test.  "The Court focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F. 2d 355, 360-61 (6th Cir. 1991)(internal citations and quotes omitted).  Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).

Petitioner's convictions for assault with intent to murder and aggravated domestic violence did not violate his double jeopardy protections because each charge contains an element within each charge that is different from the elements of the other charge.  As discussed when addressing petitioner's first claim, *infra,* assault with intent

12

to commit murder requires (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. Aggravated domestic violence requires (1) an assault, (2) of a spouse, former spouse, or someone the defendant is or was in a dating relationship, or has a child in common with. See Mich. Comp. Laws § 750.81a(2).  The crime of aggravated domestic violence does not require an intent to kill and assault with intent to commit murder does not require that the defendant and the victim be in a marital or domestic-type relationship.

Because the offenses of assault with intent to commit murder and aggravated domestic violence each contain an element that the other does not, they are not the "same offenses" under the Double Jeopardy Clause.  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The arraignment claim.

Petitioner next claims that the state trial court never acquired jurisdiction over him because he was never properly arraigned on the charge of assault with intent to murder, because that charge was added after his original arraignment and petitioner claims that he was never notified of the charge.

Petitioner is not entitled to relief on his claim that the lack of a formal arraignment deprived the trial court of jurisdiction to hear his case.  The Court first notes that petitioner never objected to the lack of a formal arraignment at the trial court level.  The failure to object to the lack of a formal arraignment constitutes a waiver to any objection to the trial court having jurisdiction to try his case. *See Garland v. Washington*, 232 U.S. 642, 646-47 (1914)(holding that when a criminal defendant proceeds as if he had been

13

arraigned and fails to object until after conviction, he has waived the objection).  In any event, the failure to arraign a defendant in open court does not deprive a court of jurisdiction to try the defendant. *See Merritt v. Hunter,* 170 F. 2d 739, 741 (10th Cir. 1948).

In addition, petitioner is unable to establish that the failure to formally arraign him on the assault with intent to commit murder charge violated his due process right to a fair trial.  The failure to arraign a defendant in open court after an information is filed against him or her is not a deprivation of due process absent a showing of any resulting prejudice. *See Tapia v. Tansy,* 926 F. 2d 1554, 1558 (10th Cir. 1991).  Formal arraignment is not constitutionally required if it is shown that the defendant knew what he or she was being accused of and is able to defend himself or herself adequately. *Dell v. State of La.,* 468 F. 2d 324, 325 (5th Cir. 1972).

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999).  Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

14

A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense.  Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F. 2d 636, 639 (6th Cir. 1986); *See also Dell v. Straub,* 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002).  An alleged defect in a state court information or indictment is therefore not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. See *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002).  In addition, "When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008)(citing *Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988)).

Petitioner is unable to show that he was surprised by the amendment of the information or that he was prejudiced in his ability to defend himself at trial.  An accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by other means, such as a preliminary examination. See *Stevenson v. Scutt*, 531 Fed. Appx. 576, 580 (6th Cir. 2013)(noting that victim's testimony from the preliminary examination provided petitioner with notice of the time

15

frame of the assaults).  The victim's testimony from the preliminary examination clearly

put petitioner on notice as to the nature of the charges.

Moreover, petitioner was convicted by a jury after a trial.  The Ninth Circuit has

observed that neither *Cole v. Arkansas, supra,* nor *In re Oliver, supra,* "foreclose the

premise that constitutionally adequate notice may come from evidence presented at

trial." See *Troches v. Terhune,* 74 Fed. Appx. 736, 737 (9th Cir. 2003).  The victim's

testimony at trial was sufficient to afford petitioner adequate notice of the charges

against him. *See Bruce v. Welsh*, 572 Fed. Appx. 325, 331 (6th Cir. 2014).  Petitioner is

not entitled to relief on his third claim.

**D.  Claim # 4.  The improper bindover claim.**

In his fourth claim, petitioner contends that there was insufficient evidence

presented at the preliminary examination to bind him over for trial on the assault with

intent to murder charge.

Petitioner has failed to state a claim upon which habeas relief can be granted.  A

prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v.

Pugh*, 420 U.S. 103, 119 (1975).  There is no federal constitutional right to a preliminary

examination. *United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975); *Dillard v.

Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965).  Petitioner's claim that there was insufficient

evidence presented at his preliminary examination to bind him over for trial thus raises

only a matter of state law and procedure that cannot form a basis for federal habeas

relief. *See Tegeler v. Renico,* 253 Fed. Appx. 521, 525-26 (6th Cir. 2007).  In addition, a

guilty verdict renders harmless any error in the charging decision. *See United States v.*

16

*Mechanik,* 475 U.S. 66, 73 (1986).  Any insufficiency of evidence at petitioner's preliminary examination would be harmless error in light of petitioner's subsequent conviction. *See Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012). Petitioner is not entitled to relief on his claim.

### E. Claim # 5. (Claim # 3 in the original petition).  The effective appeal claim.

In the third claim in his original petition, petitioner claims that he was denied his right to an effective appeal because he was not provided with the transcripts from his preliminary examination or trial.

Petitioner fails to state a claim upon which relief can be granted, because he was represented by counsel on appeal.  A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000).  This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself.  However, the Sixth Amendment does not include any right to appeal. *Id.* at 160.

Thus, there is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. See *McMeans v. Brigano,* 228 F. 3d 674, 684 (6th Cir. 2000).  By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F. 3d 1330, 1335 (5th Cir. 1996); *See also Henderson v. Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999); *aff'd in part, vacated in part on other grds* 262 F. 3d 615 (6th Cir. 2001)(defendant who was represented by

17

counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation).

Because petitioner chose to be represented by appellate counsel, any failure by the trial court or appellate counsel to provide petitioner with the trial transcripts so that he could prepare his own *pro se* brief did not violate petitioner's constitutional rights. See *U.S. v. Dierling*, 131 F.3d 722, 734, n. 7 (8th Cir. 1997); *Foss v. Racette*, 2012 WL 5949463, * 4 (W.D.N.Y. November 28, 2012); See also *Willis v. Lafler*, 2007 WL 3121542, * 18 (E.D. Mich. October 24, 2007)(petitioner not entitled to habeas relief based upon trial court's failure to rule on petitioner's post-trial motion to compel copies of transcripts and videotapes when petitioner was represented by appellate counsel). Petitioner is not entitled to relief on his fifth claim.

### F. Claim # 6. (Claim # 4 in his original petition). The due process/ineffective assistance of counsel claim.

In his sixth claim, petitioner contends that he was deprived of due process because the judge was biased against him and that trial counsel was ineffective for permitting petitioner to go to trial when he was not mentally competent.

Petitioner has provided no facts in support of these claims. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Because petitioner's final claims are

18

unsupported, he is not entitled to habeas relief.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also

deny a certificate of appealability to petitioner.  In order to obtain a certificate of

appealability, a prisoner must make a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is

required to show that reasonable jurists could debate whether, or agree that, the

petition should have been resolved in a different manner, or that the issues presented

were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529

U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims to be

debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant."  Rules Governing §

2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate

of appealability because he has failed to make a substantial showing of the denial of a

federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich.

2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because

the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas

Corpus is **DENIED WITH PREJUDICE.**

20

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma*

*pauperis.*

Dated:  April 28, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 28, 2015, by electronic and/or ordinary mail and also on
Hamza Gibson #529234, Chippewa Correctional Facility,
4269 W. M-80, Kincheloe, MI 49784.

s/Barbara Radke
Deputy Clerk

21